Monroe **CASSADY** and Nelson **T. Sparks, Appellants**

v.

**WOLF CREEK COLLIERIES EMPLOYEE BURIAL FUND, INC., Appellee.**

**No. 2011–CA–000202–MR.**

Court of Appeals of Kentucky.

May 11, 2012.

Discretionary Review Denied by Supreme Court Feb. 13, 2013.

---

Nelson T. Sparks, Louisa, KY, for appellants.

Leonard Stayton, Inez, KY, for appellee.

Before COMBS, KELLER, and STUMBO, Judges.

## OPINION

COMBS, Judge:

Monroe Cassady and his attorney, Nelson Sparks (referred to collectively as "Cassady"), appeal an order of the Martin Circuit Court which denied Cassady an award of attorney's fees. Following our review, we affirm.

During the 1960's, the Wolf Creek Collieries mining company established a burial fund for its employees. The fund was incorporated as a separate entity in 1990. Employees who chose to participate contributed $52 per year. Upon the death of the participant, the fund would pay $5000 for his funeral expenses. Wolf Creek Collieries eventually went out of business, but the fund survived. Members continued to pay into the fund, and the fund continued to pay benefits. However, because Wolf Creek Collieries was defunct, no new members were joining the burial fund. Revenues declined dramatically; in order for a person to pay in $5000, he would have to contribute to the fund for nearly 100 years.

In October 2009, the officers of the fund realized that the fund was approximately 1.3 million dollars short of being able to provide $5000 to each of its existing members at that time. Two of the officers resigned, leaving only the vice-president. The fund had outstanding funeral home obligations, but no member was authorized to sign checks for payment. New officers could not be elected because attendance at meetings failed to qualify for a quorum.

Monroe Cassady was one of the fund's earliest members, and on his own, he petitioned the Martin Circuit Court on October 28, 2009, for appointment of a Receiver. The court responded by stating its preference for the fund to work out its own problems. It agreed to appoint a receiver only if officers could not be elected before December 17, 2009. On December 1, 2009, the fund held a special meeting in which a quorum was reached, and those in attendance elected new officers.

However, Cassady was still concerned and filed an amended petition with the court alleging that the fund was not operating in compliance with Kentucky Revised Statute[s] (KRS) 301.100 et seq. That statute requires the fund to keep $100,000 on deposit with the Kentucky Office of Insurance and to file its written policies and annual statements. Cassady further urged that the members of the fund be given notice that if they continued to participate in the fund, they risked not receiving any benefits.

The fund and Cassady reached a settlement in September 2010. By its terms, members could withdraw from the fund and receive $2000, or they could continue participating with the understanding that they were not guaranteed any benefits. Cassady and thirteen other members opted to withdraw from the fund with payment. However, Cassady continued to seek attorney's fees. On January 6, 2011, the court denied Cassady's motion for attorney's fees. This appeal follows.

Our standard of review of a decision of a trial court regarding attorney's fees is abuse of discretion. *Miller v. McGinty,* 234 S.W.3d 371, 373 (Ky.App.2007). "Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable

and unfair decision." *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994). (Citations omitted). Whether a court has abused its discretion is dependent upon the facts and circumstances of each case. *Kentucky Ret. Sys. v. Foster*, 338 S.W.3d 788, 803 (Ky.App.2010).

Cassady urged the application of KRS 412.070, which mandates the award of attorney's fees:

> for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, or for the recovery of money or property which has been illegally or improperly collected, withheld or converted, if one or more of the legatees, devisees, distributes or parties in interest has prosecuted for the benefit of others interested with him[.]

However, the trial court found that the statute did not apply because Cassady's action did not result in a recovery that benefitted the fund or the other members of the fund. We agree.

Our court has recently held that the statute only applies "where parties have a common interest and a suit is brought for their common benefit and one attorney carries the burden." *Raisor v. Burkett*, 214 S.W.3d 895, 903 (Ky.App.2006) (*citing Cambron v. Pottinger*, 310 Ky. 70, 219 S.W.2d 401, 403 (1948)).

In the case before us, the settlement reached in the lawsuit did not result in a common benefit. The fund did not recover any proceeds from a third-party source. Instead, the settlement resulted in an agreement that the members be allowed to withdraw from the fund—essentially to the *detriment* of the fund. With each withdrawal, the fund lost another $2000 that would have benefitted the members who chose to remain with the fund. Fourteen members of the fund withdrew, resulting in the loss of $28,000. If those monies had not been withdrawn from the fund, the sum of $28,000 would have been collecting interest income on behalf of the remaining fund members.

The fourteen members who withdrew represent 6% of the fund's total membership—far short of a majority. Thus, it is impossible to construe the settlement as having been obtained for a common interest with a common benefit. Furthermore, Cassady was the only client of attorney Sparks. The other members of the fund were represented by separate counsel. Therefore, the Martin Circuit Court correctly decided that KRS 412.070 cannot apply.

We affirm the Martin Circuit Court.

ALL CONCUR.