RENDERED: SEPTEMBER 8, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0583-MR

DAVID G. MOUNTS; DAVID G.
MOUNTS AS PRESIDENT OF
MOUNTS ELECTRIC, INC.; AND
MOUNTS ELECTRIC, INC.                                    APPELLANTS


                APPEAL FROM HENDERSON CIRCUIT COURT
v.              HONORABLE KAREN LYNN WILSON, JUDGE
                ACTION NO. 16-CI-00606


MOUNTS & DANNHEISER, LLC                                  APPELLEE

AND


                        NO. 2022-CA-0883-MR

MOUNTS & DANNHEISER, LLC                          CROSS-APPELLANT


          CROSS-APPEAL FROM HENDERSON CIRCUIT COURT
v.              HONORABLE KAREN LYNN WILSON, JUDGE
                ACTION NO. 16-CI-00606


DAVID G. MOUNTS; DAVID
MOUNTS AS PRESIDENT OF
MOUNTS ELECTRIC, INC.; AND
MOUNTS ELECTRIC, INC.                             CROSS-APPELLEES

\*\* \*\* \*\* \*\* \*\*

BEFORE:  THOMPSON, CHIEF JUDGE; EASTON AND KAREM, JUDGES.

EASTON, JUDGE:  This case is a cautionary tale about disregarding the separate legal "person" status of corporations and limited liability companies.  Mounts Electric, Inc. ("Mounts Electric") and David G. Mounts ("Mounts"), individually and as president of Mounts Electric, have appealed the Judgment of the Henderson Circuit Court finding both liable to Mounts & Dannheiser, LLC ("LLC").  After a bench trial, the circuit court determined Mounts and Mounts Electric jointly and severally liable and ordered disgorgement of amounts they received from the LLC.  We note at the outset this case is about return of funds to the LLC not the ultimate determination of what each LLC member will receive upon the dissolution of the LLC.  The dissolution proceedings will present their own accounting questions and adjustments.  The LLC has filed a cross-appeal, arguing the circuit court erred in denying its post-trial Motion for Attorney Fees, including expert witness costs.  Upon review, we affirm both the circuit court's Judgment and its denial of the LLC's Motion for Attorney Fees.

## FACTUAL AND PROCEDURAL HISTORY

Mounts and Dannheiser formed the LLC in 1995, with the sole purpose of acquiring a commercial building in Henderson ("Peabody Building")

for investment and rental purposes. The LLC had no written operating agreement, but Articles of Organization were created. Initially, Mounts and Dannheiser verbally agreed to each own a 50% interest in the LLC. Some years later, Dannheiser sold a 10% interest in the LLC to Mounts, altering the ownership ratio to 60/40.

Dannheiser went into the business venture wanting to be a passive participant. Mounts agreed to operate the LLC by himself. Dannheiser knew Mounts was running the LLC. Dannheiser testified, "Well, I thought with his background, you know, having a degree in accounting and all of his business experience he would do a good job for the LLC."

In September 1995, the LLC purchased the Peabody Building for $2,600,000.00. To finance this purchase, the LLC obtained a loan, which required a down payment plus closing costs in the amount of $696,344.03. Mounts paid this amount himself, and it was written down in the LLC's ledger as a loan. In January 1996, Dannheiser contributed $150,000.00 to the LLC, which was also written down as a loan. Other "loans" were not so well documented.

In 2015, Henry Lee Watkins, an agent of Dannheiser's tasked with looking into the LLC's affairs, found irregularities in the business records of the LLC. In September 2016, Dannheiser filed a derivative action on behalf of the

LLC against Mounts in Henderson Circuit Court pursuant to KRS[1] 275.237. The Complaint alleged Dannheiser had recently requested from Mounts various business records relating to the operation of the LLC. The records provided raised more questions than provided answers. After some discovery,[2] the LLC filed an Amended Complaint in November 2017. The Amended Complaint alleged Mounts wrote checks on the LLC's account, payable to himself or Mounts Electric (a business entity of which Mounts was president and the sole owner), without required statutory consent from Dannheiser. The parties filed competing motions for summary judgment – both of which were denied by the circuit court.

A bench trial was held on February 9, 2022. Witnesses called at the trial were Mounts, Henry Lee Watkins, Dannheiser's accounting expert Malcolm Neel, Dannheiser, and Mount's accounting expert, Brad Minor. During the trial, all the checks at issue were introduced as evidence. Mounts admitted he wrote multiple checks to himself and Mounts Electric from the LLC's account without the consent of Dannheiser. The checks were written by Mounts to Mounts Electric while he was a fiduciary for both the LLC and Mounts Electric.

Mounts represented that the checks written to himself were for the

---

[1] Kentucky Revised Statutes.

[2] A substantial portion of the ten volumes of the circuit court record is composed of discovery disputes.

repayment of oral loans. However, there were no documents or other evidence introduced to show Dannheiser's consent to any of these oral loan transactions. Mounts testified that payments to Mounts Electric were for services performed, most of which were identified as property management for the Peabody Building (despite the fact Mounts Electric operates as an electrical contractor, not a property management company). There are no documents or other evidence showing consent or waiver from Dannheiser as to the conflict of interest among Mounts, the LLC, and Mounts Electric.

Pursuant to CR[3] 52.01, the circuit court issued its Findings of Fact, Conclusions of Law, and Judgment in April 2022. The circuit court determined that, as a member of the LLC and an officer for Mounts Electric, Mounts acted in a direct conflict of interest with the LLC from 1995-2017. The circuit court found the business records, or lack thereof, established there was no operating agreement between the members, no loan documents, no written contracts, and no promissory notes evidencing or modifying the relationship Mounts had with the LLC and Mounts Electric. The circuit court found Mounts had written checks to himself personally from the LLC's account in the amount of $736,782.31 without the required statutory consent of Dannheiser. The circuit court found Mounts wrote checks to Mounts Electric from the LLC's account in the amount of $202,258.13,

---

[3] Kentucky Rules of Civil Procedure.

also without Dannheiser's consent. The circuit court noted Mounts had graduated from Indiana University with a degree in business accounting, and thus knew or should have known of the impropriety of his actions.

Mounts and Mounts Electric filed a Notice of Appeal on May 19, 2022. The LLC also filed a Motion for Attorney Fees, which was heard on June 6, 2022. On behalf of the LLC, Dannheiser moved for attorney fees in the amount of $122,210.80, as well as fees for witnesses Malcolm Neel in the amount of $61,020.00 and Henry Lee Watkins in the amount of $61,208.77. The circuit court denied the Motion, holding there was no statutory or contractual basis to award attorney fees. The circuit court also denied the claim to the extent it was based in equity as indicated at the hearing on June 6, 2022. The LLC then filed its cross-appeal.

## MOUNTS' AND MOUNTS ELECTRIC'S APPEAL

### STANDARD OF REVIEW

As this is an appeal from a bench trial, the circuit court's findings of fact "may not be set aside unless clearly erroneous with due regard being given to the opportunity of the trial judge to consider the credibility of the witnesses." *Lawson v. Loid*, 896 S.W.2d 1, 3 (Ky. 1995). Findings of fact are not clearly erroneous if they are supported by substantial evidence. *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005). "Substantial evidence is evidence, when taken

-6-

alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Id.* The circuit court's conclusions of law will be reviewed *de novo*. *Id.*

## ANALYSIS

Mounts and Mounts Electric argue the circuit court committed reversible error for the following reasons: (1) Mounts (in his capacity as president of Mounts Electric) and Mounts Electric were never members of the LLC, and thus owed no fiduciary duty to the LLC under KRS 275.170; (2) Mounts and Mounts Electric never purported to act on behalf of the LLC, and thus no liability could be imposed under KRS 275.095; (3) the Judgment is inconsistent, (4) Dannheiser delegated his authority to manage and control the LLC to Mounts in accordance with KRS 275.165(3), and thus Mounts was not obligated to obtain Dannheiser's consent when repaying undocumented, oral LLC loans or business expenses over the course of twenty years; (5) the LLC's Articles of Organization preclude Mounts' personal liability; and (6) the statute of limitations bars the claim against Mounts and a substantial portion of the claim against Mounts Electric.

The first argument is that Mounts (in his capacity as president of Mounts Electric) and Mounts Electric were never members of the LLC, and thus owed no fiduciary duty to the LLC under KRS 275.170. They argue the circuit court's Judgment does not differentiate between Mounts' dual capacities as

-7-

member of the LLC and as president of Mounts Electric. As we will see, this case is about Mounts' failure to recognize the consequences of his dual capacity rather than any failure by the circuit court to understand the conflict issues.

The general principles governing limited liability companies in Kentucky are codified by KRS Chapter 275. Members of a limited liability company are its agents. *Patmon v. Hobbs*, 280 S.W.3d 589, 594 (Ky. App. 2009). Members of a limited liability company not only have a duty to act in the interests of the company, but they also owe a basic duty of faithfulness and loyalty to the company. *Id.* Thus, "one who acts as agent for another is not permitted to deal in the subject matter of the agency for his own benefit without the consent of the principal – the other members." *Id.*

The liability of members of limited liability companies is outlined in KRS 275.170, which states in relevant part:

> Unless otherwise provided in a written operating agreement:
>
> (1) With respect to any claim for breach of the duty of care, a member or manager shall not be liable, responsible, or accountable in damages or otherwise to the limited liability company or the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company unless the act or omission constitutes wanton or reckless misconduct.
>
> (2) The duty of loyalty applicable to each member and manager shall be to account to the limited liability

company and hold as trustee for it any profit or benefit derived by that person without the consent of more than one-half (1/2) by number of the disinterested managers, or a majority-in-interest of the members from:

(a) Any transaction connected with the conduct or winding up of the limited liability company; or

(b) Any use by the member or manager of its property, including, but not limited to, confidential or proprietary information of the limited liability company or other matters entrusted to the person as a result of his or her status as manager or member.

(3) In determining whether a transaction has received the approval of a majority-in-interest of the members, membership interests owned by or voted under the control of the member or manager whose actions are under review in accordance with subsection (2) of this section, and membership interests owned by an entity owned by or voted under the control of that member or manager, shall not be counted in a vote of the members to determine whether to consent, and the membership interests shall not be counted in determining whether a quorum, if required by a written operating agreement, exists to consider whether to consent. That a transaction was fair to the limited liability company shall not constitute a defense to the failure to request and receive the required consent of the disinterested managers or members.

Since there was no operating agreement for the LLC, Mounts was required to obtain consent from the other member, Dannheiser, before writing checks to himself and Mounts Electric. KRS 275.170 requires that a fiduciary in

breach of his duties completely disgorge himself of any benefits received. *See Patmon*, 280 S.W.3d at 595.

The first argument ties into the next one: the circuit court incorrectly imposed joint and several liability. KRS 275.095 states: "All persons purporting to act as or on behalf of a limited liability company, knowing there has been no organization under this chapter, or who assume to act for a limited liability company without authority to do so, shall be jointly and severally liable for all liabilities created while so acting." Mounts acted as both member of the LLC and president and sole owner of Mounts Electric when he wrote the checks without consent. Mounts was a fiduciary of both business entities. Whether as an individual, a member of the LLC, or president and sole owner of Mounts Electric, Mounts failed to disclose an obvious conflict of interest when he paid funds of the LLC to himself or Mounts Electric.

Kentucky law allows a claim for aiding and abetting a breach of fiduciary duty. *Insight Kentucky Partners II, L.P. v. Preferred Automotive Services, Inc.*, 514 S.W.3d 537, 551 (Ky. App. 2016). The elements of aiding and abetting a breach of fiduciary duty are: (1) knowledge of the breach of fiduciary duty and (2) substantial assistance or encouragement to the fiduciary to breach such duty. *Id.* Mounts' self-dealing involved writing checks to Mounts Electric, which gained substantial benefit also benefitting Mounts at the LLC's expense. A

fiduciary must disgorge himself of any benefits wrongly received. We believe the circuit court was correct in finding joint and several liability.

Mounts and Mounts Electric next argue the Judgment is inconsistent. They state the LLC's expert at trial identified $251,340.39 in payments to Mounts Electric. They assert the circuit court imposed liability for only $202,358.13; therefore, the circuit court did not conclude there was a breach of fiduciary duty as to the remainder of the payments to Mounts Electric.

The circuit court plainly stated Mounts breached his statutory duty and failed to obtain approval or consent for his repeated conflict of interest transactions, thus making disgorgement the appropriate remedy. The $49,082.26 difference represents the repayment of a loan made by Mounts Electric to the LLC. However, all payments made by the LLC to Mounts Electric were done outside of the statutory scheme, so the circuit court correctly determined Mounts Electric should be liable to the LLC for the entire $251,340.39 amount. Again, the circuit court addressed disgorgement, not ultimate accounting upon dissolution.

Mounts and Mounts Electric next argue Dannheiser delegated his authority to manage and control the LLC to Mounts in accordance with KRS 275.165(3), and thus Mounts was not obligated to obtain Dannheiser's consent when repaying LLC loans or business expenses over the course of twenty years. KRS 275.165(3) states:

Unless otherwise set forth in a written operating agreement, a member or manager of a limited liability company has the power and authority to delegate to one (1) or more other persons the member's or manager's powers to manage or control the business and affairs of the limited liability company, including without limitation the power to delegate to agents and employees of a member, manager, or limited liability company or to delegate by an agreement to other persons. This delegation by a member or manager of a limited liability company shall not cause the member or manager to cease to be a member or manager of the limited liability company.

In support of this argument, Mounts asserts Dannheiser wanted to be a passive participant who would take a hands-off approach, and that Mounts was to run the LLC. However, there is no evidence of delegation pursuant to KRS 275.165(3) from Dannheiser waiving his rights under KRS 275.170. A general delegation pursuant to KRS 275.165(3) does not automatically remove Mounts' duty to obtain consent for every transaction in which a conflict exists. A general delegation provides no excuse for such a breach of duty, a duty specifically imposed by KRS 275.170, which is not mentioned or contemplated within the delegation allowed by KRS 275.165(3).

Mounts then argues the LLC's Articles of Organization preclude Mounts' personal liability. Mounts cites KRS 275.180, which states a written Operating Agreement may "[e]liminate or limit the personal liability of a member

-12-

or manager for monetary damages for breach of any duty provided for in KRS 275.170[.]" While there was no Operating Agreement for the LLC, Mounts argues KRS 275.025(4) allows a limited liability company's Articles of Organization to "set forth any other matter that under this chapter is permitted to be set forth in an operating agreement not inconsistent with law." Article VII of the LLC's Articles of Organization reads:

> <u>Except as otherwise provided by Kentucky Law</u>, no member, manager, agent, or employee of Company shall be personally liable for debts, obligations, or liabilities of Company whether arising in contract, tort, or otherwise, or for the acts or omission of any other member, manager, agent or employee of Company.

(Emphasis added.)

This provision does not preclude Mounts' liability. First, the language addresses the LLC's liability not what the members owe to the LLC. Also, the qualifier "Except as otherwise provided by Kentucky Law" means Mounts would have to conduct his affairs according to KRS 275.170 and obtain the necessary consent from Dannheiser.

Mounts and Mounts Electric argue the statute of limitations bars the sole claim against Mounts and a substantial portion of the claim against Mounts Electric. They argue that, since there is no specific statute of limitations for a breach of fiduciary claim, the five-year statute of limitations under KRS 413.120 applies. They assert that, since the underlying Complaint was filed on September

-13-

26, 2016, the LLC's claim is time-barred for any checks written by Mounts before September 26, 2011. Since the last check Mounts wrote to himself was dated April 8, 2011, Mounts contends the LLC's claim against him is completely time-barred. Further, Mounts Electric was added as a party on November 29, 2017, and Mounts Electric argues the LLC's claim for any checks written to Mounts Electric before November 29, 2012, should be time-barred.

Mounts and Mounts Electric are correct in that the Kentucky statute of limitations for a breach of fiduciary duty claim is normally five years. *Osborn v. Griffin*, 865 F.3d 417, 437 (6th Cir. 2017). However, under KRS 413.190(2), this five-year period is equitably tolled whenever a defendant "conceal[s] himself or . . . obstructs the prosecution of the action." Such concealment would normally require an affirmative action by the defendant; however, "where the law imposes a duty of disclosure, a failure of disclosure may constitute concealment under KRS 413.190(2), or at least amount to misleading or obstructive conduct." *Munday v. Mayfair Diagnostic Laboratory*, 831 S.W.2d 912, 915 (Ky. 1992).

In *Security Trust Co. v. Wilson*, 210 S.W.2d 336 (Ky. 1948), the former Kentucky Court of Appeals analyzed a case in which an heir brought an action against the estate of her uncle/guardian for converting property she inherited from her deceased father. The conversion occurred in 1925, but a complaint was not filed until 1946. *Id.* at 337. The uncle's estate asserted the niece's claim was

-14-

time-barred. *Id.* In response, the niece alleged her uncle intentionally concealed his conversion of her property from her, and that she did not learn or discover these wrongful, unlawful acts until 1946. *Id.* She further stated that she had the utmost confidence in her uncle's honor and integrity. *Id.*

The court in *Security Trust* analyzed KRS 413.190(2) and held that a fiduciary relationship existed between the niece and her uncle, and the uncle's failure to disclose his conversion of her property tolled the normal five-year statute of limitations. *Id.* at 339. The court added:

> Where a confidential relationship exists between the parties, failure to discover the facts constituting fraud may be excused. In such a case so long as the relationship continues u[n]repudiated, there is nothing to put the injured party on inquiry, and he cannot be said to have failed to [use] diligence in detecting the fraud.

*Id.* at 338 (citation omitted).

In *Osborn*, *supra*, four sisters who were beneficiaries of their parents' estate brought an action alleging that three of their brothers, two of whom were representatives and thus fiduciaries of their parents' estate, breached their duties to their sisters by failing to follow the terms of their parents' wills and trusts. All these alleged breaches by the brothers occurred in the 1980s and 1990s, more than five years before the action was first filed in 2011. *Osborn*, 865 F.3d at 437. The Sixth Circuit noted there are two parallel rules that govern the application of KRS 413.190(2) in cases where the defendant conceals his wrongdoing. 865 F.3d at

438. The limitations period typically begins to run when either: (i) the defendant's wrongful concealment is revealed to the plaintiff; or (ii) the plaintiff "should have discovered his cause of action by reasonable diligence." *Id.* (citing *Emberton v. GMRI, Inc.*, 299 S.W.3d 565, 575 (Ky. 2009)).

Using *Security Trust* as a guide, the Sixth Circuit reiterated that, when a confidential relationship exists between the parties, the statute of limitations under KRS 413.190(2) does not begin to run until actual discovery of the fraud or mistake. *Id.* "The rationale of the actual notice requirement is that persons in a confidential relationship do not have the reason or occasion to check up on each other that would exist if they were dealing at arm's length." *Osborn*, 865 F.3d at 435 (quoting *McMurray v. McMurray*, 410 S.W.2d 139, 141-42 (Ky. 1966)). The court concluded the statute of limitations was equitably tolled until actual discovery of the concealment as it would have been difficult for the sisters to question their brothers' integrity or demand a detailed accounting of the brothers' business activities. *Id.* at 439.

In support of their argument that the LLC's claim is time-barred, Mounts and Mounts Electric cite *Middleton v. Sampey*, 522 S.W.3d 875 (Ky. App. 2017). In *Middleton*, the court held that plaintiffs' claim for breach of fiduciary duty was time-barred as the lawsuit was filed in 2014, more than five years after the alleged wrongdoing occurred. *Id.* at 880. The *Middleton* plaintiffs argued the

discovery rule applied as they only learned of the alleged wrongdoing in 2010. *Id.* at 878. The court held there was "no statutory authority to extend the discovery rule to breach of fiduciary duty claims under KRS 413.120(6); consequently, we conclude Appellants' claims against [Appellees] were untimely." *Id.* at 879.

*Middleton* is distinguishable from this case and the *SecurityTrust/Munday/Osborn* line of cases as the *Middleton* facts did not allege a similar fiduciary relationship to that in the present case where a specific affirmative duty to obtain consent for a transfer existed. More importantly, the court in *Middleton* was asked to apply the discovery rule and did not analyze the equitable tolling statute of KRS 413.190(2) or the *Security Trust/Munday/Osborn* line of cases. The ruling in *Middleton* is inapplicable to the facts of this case.

In the current case, Mounts admitted he did not obtain consent from Dannheiser to write the checks he did. Mounts also concealed these actions from Dannheiser. Mounts and Dannheiser had a fiduciary and confidential relationship in which Dannheiser trusted Mounts to run the day-to-day operation of the LLC. Mounts knew Dannheiser wanted to be a passive participant. Dannheiser trusted Mounts. Since Mounts concealed his wrongdoing from Dannheiser, the statute of limitations for breach of fiduciary duty was equitably tolled until Dannheiser's actual discovery of Mounts' wrongdoing. The LLC's claim is not time-barred.

-17-

## LLC'S CROSS-APPEAL

## STANDARD OF REVIEW

The LLC has filed a cross-appeal, contending the circuit court erred in denying its Motion for Attorney Fees which was heard after the bench trial. The awarding of attorney fees is entirely within the discretion of the circuit court. *Progressive Direct Ins. Co. v. Hartson*, 661 S.W.3d 291, 304 (Ky. App. 2023). Therefore, we will review the circuit court's decision regarding attorney fees for an abuse of discretion. *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). A circuit court abuses its discretion when "its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure v. Commonwealth*, 457 S.W.3d 728, 730 (Ky. App. 2015).

## ANALYSIS

The circuit court held there was no statutory or contractual basis to award attorney fees. The traditional rule in Kentucky regarding attorney fees, called the "American Rule," is that attorney fees are not recoverable without a contractual or statutory basis. *Gibson v. Kentucky Farm Bureau Mut. Ins. Co.*, 328 S.W.3d 195, 204 (Ky. App. 2010). Kentucky courts previously had the authority to impose attorney fees on an equitable basis; however, the Kentucky Supreme

-18-

Court in *Seeger v. Lanham*, 542 S.W.3d 286 (Ky. 2018) abrogated this practice. "Thus, we take this opportunity to clarify that, without a sound basis in contract or statute, a trial court may not award attorneys' fees." *Id.* at 295. Therefore, the LLC must offer evidence of a contract or statute allowing for attorney fees.

In support of its argument, the LLC points to KRS 275.337(9), which states that upon termination of a derivative action, the court may either:

> (a) Require the plaintiff member to pay any defendant's reasonable expenses, including counsel fees, incurred in defending the proceeding to the extent it finds that the proceeding or any portion thereof was commenced without reasonable cause or for an improper purpose; and
>
> (b) Require the limited liability company to pay the plaintiff member's reasonable expenses, including counsel fees, incurred in the proceeding to the extent it finds that the proceeding has resulted in a substantial benefit to the company.

Both prongs (a) and (b) of this statute are inapplicable to the current scenario of a plaintiff member of an LLC trying to obtain attorney fees for the LLC from a defendant member in the context of disgorgement prior to dissolution. Case law prior to the enactment of this specific and controlling statute may have permitted an award of such fees. *See Toler v. Clark Rural Elec. Co-op. Corp.*, 512 S.W.2d 25 (Ky. 1974). But the governing statute now does not. Even if this statute applied, it is permissive ("may"), and the circuit court did not abuse its discretion in denying attorney fees and costs.

-19-

The LLC also asserts KRS 412.070 allows for attorney fees in a situation like this. KRS 412.070 reads, in relevant part:

> In actions for the settlement of estates, or for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, or for the recovery of money or property which has been illegally or improperly collected, withheld or converted, if one (1) or more of the legatees, devisees, distributees or parties in interest has prosecuted for the benefit of others interested with him, and has been to trouble and expense in that connection, the court shall allow him his necessary expenses, and his attorney reasonable compensation for his services, in addition to the costs. This allowance shall be paid out of the funds recovered before distribution. The persons interested shall be given notice of the application for the allowance, provided, however, that if the court before whom the action is pending should determine that it is impracticable and too expensive to notify all of the parties individually, then by order of said court, personal notice may be dispensed with and in lieu thereof, notice of the application shall be given by an advertisement pursuant to KRS Chapter 424.

This statute is often referred to as the "common fund" rule and only applies "where parties have a common interest and a suit is brought for their common benefit and one attorney carries the burden." *Cassady v. Wolf Creek Collieries Employee Burial Fund*, 390 S.W.3d 151, 153 (Ky. App. 2012).

KRS 412.070 is inapplicable as there is only one party in interest for the purposes of disgorgement (the LLC) in this case, which was brought by one of the two members of the LLC. Again, the LLC is a separate legal person from the individuals Mounts and Dannheiser. Other than a potential and incidental benefit

-20-

to the members on dissolution of the LLC, there is no common benefit from the disgorgement. The recovery by the LLC will simply enable a dissolution for Mounts and Dannheiser to distribute the funds disgorged. Each of them had counsel to represent their interests. What little relevant case authority exists under KRS 412.070 suggests fees should not be awarded in these circumstances. *Cf. Collins v. Hudson's Adm'x*, 140 S.W.2d 365 (Ky. 1939) (involving a dispute between partners).

There is no statutory or contractual basis for the LLC to be awarded attorney fees in this matter. Even if equity remained as a basis for an award of attorney fees and expenses, the circuit court did not abuse its discretion by denying the Motion, especially considering the exorbitant amount sought for witness fees.

## CONCLUSION

The circuit court did not err in finding Mounts and Mounts Electric jointly and severally liable for Mounts' breaches of his statutory duty to the other member of the LLC and directing disgorgement of the amounts improperly received. The circuit court did not abuse its discretion in denying attorney fees and expenses to the LLC. We AFFIRM both the Judgment of the Henderson Circuit Court, as well as its denial of an award of attorney fees and expenses.


ALL CONCUR.


-21-

BRIEF FOR APPELLANTS/CROSS-APPELLEES:

Clifford R. Whitehead
Evansville, Indiana

BRIEF FOR APPELLEE/CROSS-APPELLANT:

Zack N. Womack
Henderson, Kentucky